**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

COLE GORDON                                                                    PLAINTIFF

v.                                        No. 4:15CV00518 JLH

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS; SCOTT NORWOOD,
in his individual and official capacities;
GEORGE LEE, in his individual and official capacities;
CHRIS PETERSON, in his individual and official
capacities; GARY HOGAN, in his individual and
official capacities; and RICHARD TURNER, in his
individual and official capacities                                            DEFENDANTS

<u>**OPINION AND ORDER**</u>

Cole Gordon resigned as the University of Arkansas at Little Rock assistant baseball coach

and now brings this action against the Board of Trustees of the University of Arkansas and Scott

Norwood, George Lee, Chris Peterson, Gary Hogan, and Richard Turner in their individual and

official capacities.   Gordon alleges that he was forced to resign because he reported an ongoing

misuse of public funds, harassment by Scott Norwood, the head baseball coach, of the players, and

sexual harassment of the players' girlfriends by Norwood.   He asserts claims under the Arkansas

Civil Rights Act of 1993,[1] 42 U.S.C. § 1983 (alleging violations of the First and Fourteenth

Amendments), 42 U.S.C. § 1985 (alleging a conspiracy to violate the First and Fourteenth

Amendments), Title IX,[2] and the Arkansas Whistle-Blower Act.[3]   The defendants have moved to

---

[1] ARK. CODE ANN. § 16-123-101, *et seq.*

[2] 20 U.S.C. § 1684, *et seq.*

[3] ARK. CODE ANN. § 21-1-601, *et seq.*

dismiss these claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the following reasons, the motion is granted.

## I.

Gordon served as the assistant baseball coach for the UALR Trojans from August 2013 to April 2014.  The second amended complaint alleges that during Gordon's tenure at UALR he complained to Gary Hogan–Senior Associate Athletic Director for External Relations–and Richard Turner–Senior Associate Athletic Director for Compliance and Student Support–about three issues: (1) Former head baseball coach Scott Norwood's physical violence toward him; (2) Norwood's sexual harassment of players and their girlfriends; and (3) illegal waste of public funds at UALR.[4] Neither Hogan nor Turner took any action to address these issues.  Human resources merely asked Norwood if the allegations about his behavior were true, but he denied them.  Gordon accused UALR of using non-athletic scholarships funded by taxpayers as unofficial athletic scholarships and providing athletic prospects with scholarship interview questions prior to the interviews.  Human resources did not attempt to seek additional information from Gordon about his complaints until he no longer worked at UALR.

The discord between Norwood and Gordon escalated into a physical altercation between the two on February 13, 2014.  A little over a month later on March 19, 2014, a player attempted suicide.  The player stated that he attempted suicide because he could no longer endure Norwood's treatment of the baseball team.  Gordon alleges that Norwood responded to the player's concerns by berating him and encouraging him to quit the team.  The player subsequently lodged a formal complaint about Norwood's behavior with another UALR baseball coach, Chris Marx.  On March

---

[4]Gordon initially reported the illegal waste of funds to Norwood, who took no action.

23, 2014, Gordon learned that the players planned to forfeit a game to protest Norwood's treatment of the team.  Gordon reported this to Hogan, who spoke with the coaches and players to reach an agreement that the players would play as long as Norwood did not attend.  Hogan and Turner met with the team and all of the coaches–excluding Norwood–a few days later.  During the meeting, players complained about Norwood's harassment of the players, sexual harassment of their girlfriends, and discussed how Norwood purchased alcoholic beverages for some players.  The school officials, coaches, and players did not reach a long-term resolution.

Hogan and Turner met with the players and coaches again the next day, but Norwood attended the meeting.  The players did not address the issues discussed the previous day, but Norwood apologized and the players agreed to continue the season if his behavior changed.  Norwood remained in the dugout during the games and Gordon stood in as third-base coach until April 2, 2014, when Hogan allowed Norwood to return to the field.  During that game, a brawl broke out between UALR and the opposing team.  Gordon alleges that around this time, Hogan and Turner began to accuse him of wrongdoing.  Hogan, Turner, and Norwood confronted Gordon about an illegal visit he conducted with a prospective athlete on April 17, 2014.  Gordon informed them that it was a personal visit, that the prospective athlete was the son of a friend, and that Gordon did not induce the athlete to come play at UALR.  Turner and Hogan responded that if that were true, no NCAA violation occurred.  Gordon reiterated his concerns about Norwood to Turner and Hogan at the meeting, but Norwood again denied any wrongdoing.  Gordon provided Hogan and Turner with the names of students who had been harassed and those who had witnessed the harassment.

Turner met with those students on April 20, 2014.  He allegedly provided the students with pre-written statements stating that Gordon had engaged in wrongdoing equally as bad or worse than

that of Norwood.  Turner indicated to the students that they were to either sign the statements or face ramifications from the baseball program or the school itself.  The next day, Gordon met with Hogan, Turner, Norwood, and Chris Peterson to confront him with the signed statements and the alleged NCAA violation.  Gordon alleges that they threatened his prospects of ever coaching again, unless he resigned and agreed not to pursue further action against Norwood.  Gordon reminded Hogan and Turner that he had previously reported Norwood's behavior and instances of illegal waste.  He asked Peterson to consider those complaints as proof that he had done nothing wrong, but was being retaliated against for making those reports.  Peterson replied that if Gordon wanted to coach again, he would resign and go away quietly.  Gordon resigned.  UALR did not report the alleged violation to the NCAA until May 22, 2014, after Gordon began to look into possible legal remedies based on the treatment he received as a UALR employee.

## II.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal based upon a lack of subject matter jurisdiction.  To prevail on a motion to dismiss for lack of subject matter jurisdiction, the challenging party must successfully attack the complaint, either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).  "In a facial challenge to jurisdiction, all of the factual allegations, as contained in the non-moving party's pleadings, which concern the jurisdictional issue, are presumed to be true and, therefore, the non-moving party receives the same protections that it would receive if it were defending against a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure." *Hoeffner v. Univ. of Minnesota,* 948 F. Supp. 1380, 1384 (D. Minn. 1996).  If a plaintiff fails to allege an element necessary for a finding of subject

matter jurisdiction, the complaint should be dismissed. *Titus*, 4 F.3d at 593.  The defendants argue that the Court does not have jurisdiction over Gordon's official capacity claims because they are barred by sovereign immunity.  Document #25 at 3-4.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.  It has been interpreted to bar suits brought against a State in federal courts by her own citizens, as well as those of another State.  *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974).  The Eleventh Amendment generally bars any suit brought in federal court against a state, state agency, or state officials acting in their official capacities.  *See Seminole Tribe v. Florida*, 517 U.S. 44, 74, 116 S. Ct. 1114, 1132, 134 L. Ed. 2d 252 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984); *Edleman*, 415 U.S. at 663, 94 S. Ct. at 1355.  But three exceptions allow suits against a state, state agency, or state officials: (1) Congress may abrogate the States' immunity; (2) a state may waive its immunity; or (3) under the *Ex Parte Young* doctrine, a plaintiff may file suit against state officials acting in their official capacities seeking prospective injunctive relief for ongoing violations of federal law.  *Seminole Tribe*, 517 U.S. at 74, 116 S. Ct. at 1132.  Gordon does not contend that the State has consented to suit in federal court; rather, he contends that the *Ex Parte Young* exception applies to his § 1983 and § 1985 claims and that Congress abrogated the States' immunity in Title IX.[5]

---

[5]Gordon does not bring his Arkansas Civil Rights Act claims against the state officials in their official capacities and he concedes that his unlawful retaliation in violation of the Arkansas Whistle-Blower Act claim is barred by the Eleventh Amendment.  Document #35 at 8.  Gordon

**A.     Section 1983 and Section 1985 Claims**

Gordon's § 1983 and § 1985 claims against the defendants in their official capacities are barred by the Eleventh Amendment.  First, the Board of Trustees is immune from suit based on Gordon's § 1983 and § 1985 claims, whether for damages or injunctive relief.  *See Monroe v. Ark. State Univ*. 495 F.3d 591, 594 (8th Cir. 2007) ("the University argues the Eleventh Amendment bars suit against the University for any kind of relief, not merely monetary damages. We agree.").  *See also Buckley v. Univ. of Ark. Bd. of Trustees*, 780 F. Supp. 2d 827, 830 (E.D. Ark. 2011) ("The governing bodies of state universities enjoy the same immunity from suit as the universities themselves.").  Second, the state officials in their official capacities are likewise immune from suit on these claims.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) (stating that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" when the suit is for damages).  While the Eleventh Amendment does not protect state officials sued in their official capacities from claims for prospective injunctive relief alleging violations of federal law, the violation must be ongoing in order for a plaintiff to avoid immunity and retroactive relief is barred by the Eleventh Amendment.  *See Green v. Mansour*, 474 U.S. 64, 69, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371 (1985); *Monroe*, 495 F.3d at 594 (citing  *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)); *Lynch v. Pub. Sch. Ret. Sys. of Mo., Bd. of Trustees*, 27 F.3d 336, 330 (8th Cir. 1994).

"In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an

_____

concedes that sovereign immunity under the Eleventh Amendment must be specifically waived and that it is not so waived in the Arkansas Whistle-Blower Act.  *Id*.  *See Crosby v. Pulaski Technical Coll. Bd. of Trustees*, 4:06CV01003-SWW, 2007 WL 2750672 at *5 (E.D. Ark. Sept. 18, 2007).

ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*

*Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645, 122 S.Ct. 1753, 1760, 152

L.Ed.2d 871 (2002).  Gordon's claim for injunctive relief–the cleansing of his personnel file–is

prospective in nature.  *See, e.g.*, *Elliot v. Hinds*, 786 F.2d 298, 301 (7th Cir. 1986) ("The . . . removal

of damaging information from the plaintiffs work record is not compensatory; rather, it is to compel

the state official to cease her actions in violation of federal law and to comply with constitutional

requirements.").  There is also support for the proposition that disparaging information in a

personnel file constitutes an ongoing violation.  *See Marino v. City Univ. of New York*, 18 F.

Supp.3d 320, 333 (E.D.N.Y. 2014).  But Gordon does not allege that the UALR defendants have the

responsibility or capacity to provide him with the prospective relief he seeks.  *See, e.g.*, *Randolph*

*v. Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001) (refusing to allow claims for injunctive relief against

prison officials to proceed because inmate had moved to another facility and any injunctive relief

would necessarily be directed at that facility); *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d

604, 605 (8th Cir. 1994) (noting that a case is moot when circumstances change to such a degree that

a "federal court can no longer grant effective relief").  The defendants argue that Norwood and

Peterson no longer serve the state in an official capacity and Hogan, Turner, and George Lee do not

have the authority to grant the relief sought: only the UALR Chancellor may expunge an

employment record.  Document #25 at 7.  "[A]ny prospective injunctive relief based upon [the First

or Fourteenth Amendments] will be of no consequence to [Gordon]."  *Randolph*, 253 F.3d at 345.

Because the amended complaint fails to allege prospective relief that can be granted by the parties sued, it fails to meet the basic pleading requirements of the *Ex Parte Young* doctrine.[6]

**B.    Title IX**

Gordon's claim for unlawful retaliation in violation of Title IX is not barred by the Eleventh Amendment because Congress abrogated the States' Eleventh Amendment immunity under Title IX. *Gesber v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284, 118 S. Ct. 1989, 1996, 141 L. Ed. 2d 277 (1998) (citing 42 U.S.C. § 2000d-7(a)(1)); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995).

### III.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  The court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572, 127 S. Ct. at 1975, and

---

[6]Recognizing this, Gordon stated in his brief: "Accordingly, Plaintiff moves that Joel Anderson[–current UALR Chancellor–]be added as a defendant in his official capacity." Document #35 at 9.  Local Rule 5.5(e) requires a party who moves to amend a pleading to attach a copy of the amendment to the motion.  The motion must contain a concise statement setting out what exactly is being amended in the new pleading.  Gordon has not complied with the local rule to amend his pleading.

must draw all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

## A.     Qualified Immunity

A state official sued in his individual capacity may invoke the affirmative defense of qualified immunity. The individual defendants[7] contend they are entitled to qualified immunity from Gordon's § 1983 and § 1985 claims[8] because the conduct alleged fails to state a violation of a clearly established federal right of which a reasonable official would be aware. Document #25 at 27. Qualified immunity "is an affirmative defense for which the defendant carries the burden of proof." *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012) (quoting *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002)); *Sisney v. Reisch*, 674 F.3d 839, 844 (8th Cir. 2012). Qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995). The Supreme

---

[7]The defendants refer to Lee, Hogan, and Turner in their brief. Document #25 at 27. They are the only individual defendants who are still employees at UALR. But the former UALR employees–Norwood and Peterson–are also entitled to qualified immunity if Gordon fails to allege the deprivation of a constitutional right or the right was not clearly established. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011) (finding that the former attorney general was entitled to qualified immunity from suit concerning a policy he implemented while in office). The motion to dismiss asserts that all of the plaintiff's individual capacity § 1983 and § 1985 claims are barred by sovereign immunity, Document #24 at 2, so the Court will address the issue accordingly.

[8]The defendants argue that a claim for civil conspiracy pursuant to § 1985 cannot be based on a First Amendment violation. That may be so, but it does not matter here because Gordon has failed to allege a First Amendment violation upon which to base the conspiracy claim.

Court has characterized qualified immunity as "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). As such, qualified immunity balances the need to hold public officials accountable with the need to shield those officials from harassment, distraction, and liability when they act reasonably, which is why "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Id.* (internal quotation marks omitted).

A two-step inquiry determines whether a government official is entitled to qualified immunity: "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right[] and (2) [whether] the right was clearly established at the time of the deprivation." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (quoting *Parish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). "The defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012) (quoting *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012)). Courts may address either step first. *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818. The Court will first determine whether Gordon has alleged a violation of a federal right.

### 1.     First Amendment

Gordon brings a § 1983 claim alleging that the defendants retaliated against him in violation of the First Amendment. Document # 20 at 15, 16 ¶¶ 85-90. He also brings a § 1985 claim alleging that the individual defendants conspired to terminate his employment because of his complaints about Norwood. *Id.* at 16, ¶ 93. To establish a violation of § 1983, the plaintiff must show that he was deprived of a right secured by the Constitution and laws of the United States and that the

deprivation was caused by a person or persons acting under the color of state law.  *Tipler v. Douglas Cnty., Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007).  A § 1985 claim requires the plaintiff to show that an independent federal right has been infringed because, like § 1983, § 1985 provides a remedy but grants no substantive rights.  *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004).  Gordon bases his § 1983 and § 1985 claims on the right of free speech guaranteed by the First and Fourteenth Amendments.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed 2d 689 (2006).  Although a public employee does not forfeit First Amendment protection merely by working for the government, the state, as an employer, has a legitimate interest in regulating the speech of its employees.  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734, 20 L. Ed. 2d 811 (1968).  "The problem in any case is to arrive at a balance between the interest of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Id*., 88 S. Ct. at 1734-35.  "Typically, in determining whether speech is constitutionally protected, as a threshold matter [the Court] must first consider whether the employee spoke as a citizen and on a matter of public concern."  *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 655 (8th Cir. 2007).

The Eighth Circuit applies the following analysis:

> To determine whether speech qualifies as a matter of public concern, we must examine the content, form and context of the speech, as revealed by the whole record.  When speech relates both to an employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern.  If the main motivation for the speech was furthering [the

employee's] private interests rather than to raise issues of public concern, her speech is not protected, even if the public would have an interest in the topic of her speech.

*Anzaldua v. Ne. Ambulance and Fire Prot. Dist.*, 793 F.3d 822, 833 (8th Cir. 2015) (citations and quotation marks omitted). The speech at issue here can be divided into three topics: (1) Gordon's complaints that the university was mishandling public funds; (2) Gordon's complaints about Norwood's physical violence toward him; and (3) Gordon's complaints about Norwood's sexual harassment of students. "The focus is on the employee's role in conveying the speech rather than the public's interest in the topic." *Tarasenko v. Univ. of Ark.*, 63 F. Supp. 3d 910, 920 (E.D. Ark. 2014). "Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir. 1999).

> The Eighth Circuit has specifically addressed allegations of misuse or waste of public funds:

> It is clearly established that speech about the misuse or waste of public funds is generally of public concern. See *Domina v. Van Pelt*, 235 F.3d 1091, 1098 (8th Cir.2000). In the context of a state university, we have previously held that a professor's allegations of misused funds and poor administration constituted speech on matters of public concern. *See Hamer v. Brown*, 831 F.2d 1398, 1400–02 (8th Cir.1987).

> However, it is not enough to say that a particular topic or subject is, at some level of abstraction, a matter of public concern. We must analyze the content, form, and context of the speech to determine whether the speaker was acting primarily as a concerned citizen or as an employee . . . Although this is a question of law, it is, to say the least, a fact-intensive inquiry.

*Schilcher v. Univ. of Ark.*, 387 F.3d 959, 963 (8th Cir. 2004). Gordon alleges academic scholarships partially funded by taxpayers were used to provide unofficial athletic scholarships, that the interview questions for these academic scholarships were provided to athletic prospects, and interviews for

those academic scholarships were conducted by "Diamond Dolls."[9]  He also alleges that he reported this illegal waste of public funds to Norwood, Hogan, and Turner.  Document #20 at 3-4, ¶¶ 12, 16. The context and form of Gordon's expression shows that he was acting primarily as an employee, rather than a concerned citizen.  Gordon reported the illegal use of funds to his superiors within the athletic department in his capacity as a UALR employee.

Gordon's motivation in providing his knowledge that scholarship funds were being used improperly was not to communicate it to the public at large or initially even the university at large, but to the UALR athletic department.  *See Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d 930, 937 (8th Cir. 2008) (holding that the First Amendment "does not protect expressions made as part of the employee's job duties"); *Wingate v. Gage Cnty. Sch. Dist. No. 34*, 528 F.3d 1074, 1081 (8th Cir. 2008) (holding that employee was not speaking as a concerned public citizen, but merely an employee concerned with the District's internal policies and practices); *Compare Domina*, 235 F.3d at 1097 (holding that speech related to the expenditure of public funds was a matter of public concern where employee made comments in response to a request by an outside committee–authorized either by the state legislature and the governor or a private organization–to investigate allegations of impropriety); *Hamer*, 831 F.2d at 1402 (holding that speech related to the expenditure of public funds was a matter of public concern where employee reported an affair between two county employees and the community–of which the employee was a part–had already expressed concern that they were misusing tax dollars).

---

[9]"Diamond Dolls" are students who helped with UALR baseball ticket sales and other functions of the baseball program.  Document #20 at 4, ¶ 15.

The same principles apply to Gordon's expressions involving Norwood's physical violence toward him and sexual harassment of other students.  Gordon alleges that he reported the physical violence and sexual harassment to Hogan and Turner.  Document #20 at 3, 10,  ¶¶ 10, 58.  Gordon also alleges that at a meeting during which he was under "professional threat," he complained about Norwood to Peterson.  Document #20 at 12, ¶ 71.  Gordon's complaints about Norwood's physical violence toward him are matters of private concern, motivated by personal frustration and a desire for a better work environment.  Gordon's complaints about Norwood's sexual harassment of other students are also matters of private concern because of the form and context in which they were made.  While the public would certainly have an interest in the sexual harassment of students at a university partially funded by taxpayer dollars, Gordon was not speaking as a concerned citizen.  Again, he learned the information through the players on his team and his own observations as an employee of the athletic department and then he relayed the information solely to those within the university.  *See McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 855, 865-67 (8th Cir. 2009) (finding that an employee's internal complaints about sexual harassment were not matters of public concern).  Gordon's role in conveying the speech was as an employee of the UALR athletic department.  Therefore, his speech as alleged in the amended complaint is not protected by the First Amendment.  Because Gordon has failed to allege a violation of the First Amendment, qualified immunity is established on the face of the amended complaint as to his § 1983 and § 1985 claims against the university officials in their individual capacities.

## 2.    Equal Protection

It is unclear from the amended complaint whether Gordon is alleging claims under § 1983 and § 1985 that the defendants discriminated against him and conspired to discriminate against him

based on his sex in violation of the Equal Protection Clause of the Fourteenth Amendment. Document # 20 at 2, 15, 16 ¶¶ 2, 85-97. If so, the defendants are entitled to qualified immunity. The amended complaint is void of any factual allegations that Gordon was terminated because of his sex. *See id.*   Rather, Gordon argues that he has a sex discrimination claim based on association. Document #35 at 9. Gordon alleges that "[b]y making the specific allegations of sexual harassment of students by Norwood to UALR, Gordon became associated with both the male students making the complaints of sexual harassment and the statements of sexual interest and intention with regard to the girlfriends of the male baseball players."   Document #20 at 8, ¶ 46.

It is true that a non-minority plaintiff can bring a claim if he is discriminated or retaliated against for attempting to vindicate the rights of minorities, but the claim is limited to those rights protected by 42 U.S.C. § 1981. *See Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (8th Cir. 2015); *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1224-25 (8th Cir. 2015); *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1031 (8th Cir. 2013); *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012).   Gordon relies on *Chandler v. Fast Lane, Inc.*, where this court held that a white employee stated a claim for race discrimination under Title VII when the employer infringed upon "[a] white person's right to associate with African-Americans [as] protected by § 1981."   868 F. Supp. 1138, 1143 (E.D. Ark. 1994).   *Id.*   The court's reasoning[10] hinged upon its finding that the employer violated § 1981. *See id.* Sex discrimination, however,

---

[10]The court stated "[the employee] does not claim that she was a target of defendants' allegedly anti–African–American employment practices. Rather, [she] argues that defendants' insistence that she enforce these practices violated her fundamental right to associate with African–Americans, and as a consequence defendants committed a separate violation § 2000e–2(a)(1) by engaging in an unlawful employment practice that 'otherwise discriminate[d] against an[ ] individual,' namely [the employee]."   868 F. Supp. at 1143.

does not fall within the scope of § 1981.[11]   *See Runyon v. McCrary*, 427 U.S. 160, 168, 96 S. Ct. 2586, 2593, 49 L. Ed. 2d 415 (1976).   Because Gordon has failed to allege a violation of the Fourteenth Amendment, qualified immunity is established on the face of the amended complaint as to Gordon's § 1983 and § 1985 claims against the university officials in their individual capacities.

## B.     Statutory Immunity on the State-Law Claims

Gordon brings two state-law claims under sections 105[12] and 108[13] of the Arkansas Civil Rights Act for unlawful retaliation based on allegations that he was terminated for his complaints about Norwood and the illegal use of public funds.   Document #20 at 15-16, ¶¶ 84-90;   Document #35 at 17. The defendants argue that these claims against the UALR officials in their individual capacities are barred by statutory immunity under Ark. Code Ann. § 19-10-305(a).  The statute states in pertinent part:

> Officers and employees of the State of Arkansas are immune from suit, except to the extent that they may be covered by liability insurances, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

The Arkansas Supreme Court summarized its interpretation of this statute, stating:

> This court has recognized that the immunity provided by section 19–10–305 is similar to that provided by the Supreme Court for federal civil-rights claims . . . [A]n official is immune from suit if his actions did not violate clearly established principles of law of which a reasonable person would have knowledge. More specifically, section 19–10–305(a) provides state employees with statutory immunity from civil liability for non-malicious acts occurring within the course of their employment.

---

[11]Gordon argues that the *Chandler* logic applies to Title IX as well, stating that he is the subject of sex discrimination by virtue of opposing sexual harassment.  But for the reasons the Court articulated in the Equal Protection context, such a claim is limited to rights protected by § 1981.

[12]ARK. CODE ANN. § 16-123-105.

[13]ARK. CODE ANN. § 16-123-108.

*Simons v. Marshall*, 369 Ark. 447, 452, 255 S.W.3d 838, 842 (2007) (internal citations omitted). Gordon does not contend that the defendants were acting other than in the scope of their employment by UALR. *See* Document #34. Nor does the amended complaint allege that they were covered by liability insurance or facts allowing the Court to infer that their acts were malicious.[14] *See* Document #20. Therefore, the defendants are immune from damages for the state-law civil-rights claims. *See Ark. Dept. of Human Serv. v. Fort Smith School* Dist., 455 S.W.3d 294, 301 (Ark. 2015); *Smith v. Daniel*, 2014 Ark. 519, 11, 452 S.W.3d 575, 581; *Rainey v. Hartness*, 339 Ark. 293, 303, 5 S.W.3d 410, 417 (1999); *Cross v. Ark. Livestock and Poultry Comm'n*, 328 Ark. 255, 261, 943 S.W.2d 230, 233 (1997).

## C.   Title IX

Finally, Gordon alleges a claim for unlawful retaliation under Title IX against the UALR Board of Trustees. Document #20 at 18-19, ¶¶ 102-08. Because Congress abrogated sovereign immunity in Title IX and because the Board is not an individual entitled to qualified immunity, the issue is whether the allegations in the amended complaint state a claim under Rule 12(b)(6). Title IX prohibits sex discrimination by recipients of federal education funding. 20 U.S.C. § 1681(a). The United States Supreme Court held that Title IX implies a private right of action to enforce this prohibition and that it authorizes private parties to seek monetary damages for intentional violations.

---

[14]"It is true that in law malice is not necessarily personal hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another. Malice is also defined as 'the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent . . . A conscious violation of the law . . . which operates to the prejudice of another person. A condition of the mind showing a heart . . . fatally bent on mischief." *Ark. Dept. of Envtl. Quality v. Al-Madhoun*, 374 Ark. 28, 35, 285 S.W.3d 654, 660 (2008) (internal citations omitted).

*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 65, 112 S. Ct. 1028, 1032, 117 L. Ed. 2d 208 (1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690-93, 99 S. Ct. 1946, 1954-56, 60 L. Ed.2d 560 (1979). "Retaliation against a person because that person has complained of sex discrimination is [a] form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497, 1504, 161 L. Ed. 2d 361 (2005). Title IX does not require the victim of the alleged retaliation to also be the victim of the alleged discrimination. *Id*. at 179, 125 S. Ct. at 1507. But the discrimination must be connected with an education program or activity receiving federal financial assistance. *Lam v. Curators of the Univ. of Mo.*, 122 F.3d 654, 656 (8th Cir. 1997).

The analysis of claims for retaliation under Title IX employs the same legal standards as its analysis of claims for retaliation under Title VII. *See Brine v. Univ. of Iowa*, 90 F.3d 271, 273 (8th Cir. 1996) (analyzing Title VII and Title IX retaliation claims together); *See also Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002) ("[T]he jurisprudence of Title VII supplies an applicable legal framework"); *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 248 (2nd Cir. 1995) ("In reviewing claims of discrimination brought under Title IX by employees, whether for sexual harassment or retaliation, courts have generally adopted the same legal standards that are applied to such claims under Title VII"). "[A] plaintiff need not plead facts establishing a prima facie case of discrimination under *McDonell Douglas* in order to defeat a motion to dismiss." *Hager v. Ark. Dept. Of Health*, 735 F.3d 1009, 1014 (8th Cir.2013). However, the plaintiff must allege facts sufficient to support a legal conclusion to "raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

An employer engages in unlawful retaliation when the employee participates in a protected activity and suffers an adverse employment action as a result of that activity. *Brine*, 90 F.3d at 273. Gordon's allegations do not meet this standard.

Gordon alleges that he reported Norwood's sexual harassment of students to Hogan, Turner, and UALR human resources.  Document #20 at 3, 9, 10, 18, ¶¶ 10, 49, 56, 58, 104, 106.  Opposition to conduct prohibited by Title IX constitutes protected conduct "as long as the employee acted in a good faith, objectively reasonable belief that the [conduct was] unlawful." *See Barker v. Missouri Dept. of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008) (holding that the plaintiff, who assisted her co-worker in filing a grievance, failed to allege facts to support a finding that she had an objectively reasonable belief that a single, isolated statement constituted sexual harassment).  Gordon complained to UALR that Norwood made an inappropriate comment to a UALR student about her breasts.  Document #20 at 8, ¶ 48.  But that single comment–while offensive and inappropriate–does not constitute harassment "sufficiently severe or pervasive" so as to create an abusive educational environment actionable under Title IX. *Lam v. Curators of the Univ. of Missouri at Kansas City Dental Sch.*, 122 F.3d 654, 656 (8th Cir. 1997). *See also Brannum v. Missouri Dept. of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008) (holding that employee did not engage in protected conduct by helping a co-worker report sexual harassment because "the single, relatively tame statement at issue [was] insufficient as a matter of law to support an objectively reasonable belief that it amounted to unlawful sexual harassment.").  Gordon also complained to UALR that Norwood repeatedly made comments to the players about their girlfriends' breasts, even after the players asked him to stop. *Id*. at 8, ¶¶ 45, 47-48.  Same-sex harassment is actionable under Title IX. *See Wolfe v. Fayetteville, Ark. Sch. Dist.*, 548 F.3d 860, 864 (8th Cir. 2011).  But in addition to being "so severe pervasive,

19

and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school," the harassment must constitute discrimination based on sex.  *Id.*  It is not enough that the conduct be "merely tinged with offensive sexual connotations.  *Oncale v. Sundower Offshore Serv., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998).  There are no facts allowing the court to infer that Norwood discriminated against the players because of their sex by making crude comments about their girlfriends.  Therefore, Gordon did not have an objectively reasonable belief that those comments were unlawful.  Gordon has failed to allege facts showing he engaged in conduct protected by Title IX.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is GRANTED.  Document #24.  Cole Gordon's amended complaint is dismissed without prejudice.  If Gordon wishes to file an amended complaint, he must file an appropriate motion on or before March 31, 2016.  If he fails to do so, a judgment will be entered dismissing this action without prejudice.

IT IS SO ORDERED this 10th day of March, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE